IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM D. TRAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:08CV785-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff William Traylor brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of decisions by the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits and issuing a partially favorable decision on his application for supplemental security income under the Social Security Act.  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed as to plaintiff's Title II claim and reversed as to his Title XVI claim.

**BACKGROUND**

On July 29, 2005, plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income.  On March 5, 2007, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing.

The ALJ rendered a decision on April 13, 2007.

The ALJ denied plaintiff's Title II claim at "step 2" of the sequential evaluation process. He found that plaintiff's date last insured was December 31, 1995 -- almost a decade before plaintiff filed his claim for benefits. The ALJ noted that, although the plaintiff was involved in a tractor accident in the 1980s, there was "no medical evidence supportive of disability at any time prior to his date last insured[,]" and that there was "no documentation of any type that establishes the presence of any functional restriction on the claimant's behalf as a result of his impairments prior to his date last insured." (R. 22-23).

Proceeding with his analysis of plaintiff's Title XVI claim, the ALJ concluded that plaintiff suffered from the severe impairments of degenerative disc disease, right knee arthritis and holosystolic murmur. (R. 24). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to:

> . . . perform unskilled work at the light exertional level. Specifically, . . . the claimant is capable of occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking a total of about six hours in an eight-hour workday; and push and/or pull unlimited, other than as shown for lift and/or carry. In regards to postural limitations, the claimant can frequently climb ramps and stairs, balance, kneel, and crawl. He can occasionally climb ladders, ropes and scaffolds, stoop and crouch.

(R. 25). The ALJ concluded that, while plaintiff could not return to his past relevant work as a farmer, which is medium and unskilled, he could perform other work which exists in significant numbers in the national economy. Thus, he concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from August 10, 1988 -- his alleged

onset date -- through the date of the decision.

Plaintiff sought review of the ALJ's decision by the Appeals Council. On April 3, 2008, the Appeals Council granted plaintiff's request for review of the ALJ's decision on his SSI claim; on July 25, 2008, the Appeals Council issued a partially favorable decision as to plaintiff's Title XVI claim. (R. 7-13). On July 25, 2008, the Appeals Council denied review of the ALJ's decision on plaintiff's claim for disability insurance benefits. (R. 4-6). Accordingly, the ALJ's decision stands as the final decision of the Commissioner as to plaintiff's Title II claim.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the Commissioner's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The Commissioner's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the Commissioner's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the Commissioner's application of the law, or if the Commissioner fails to provide the court with

sufficient reasoning for determining that the proper legal analysis has been conducted, the Commissioner's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### Title II Claim

Plaintiff previously worked as a farmer. (R. 60). At some point in the 1980s, plaintiff was injured when a tractor turned over and rolled onto him.[1] Plaintiff had three surgeries after the accident. (R. 136). Plaintiff has not engaged in work at a level which constitutes significant gainful activity since August 1988. (R. 80-81, 136). Plaintiff's date last insured was in December 1995 (R. 81, 147), nearly ten years before he filed the present application for benefits.[2] The earliest medical evidence in the record is the report of Dr. Ellis regarding his consultative physical examination of the plaintiff on September 7, 2005. (R. 95-102). Plaintiff attempted to get copies of the records of his earlier medical treatment due to the accident, but the records had been destroyed and are no longer available. (R. 147-48). Because there was no evidence regarding plaintiff's functional limitations at any time before his date last insured, the ALJ denied plaintiff's Title II claim at Step 2 of the sequential analysis. It is not apparent that plaintiff challenges the Title II decision before this court, as he does not identify any specific deficiency in the Step 2 denial of disability insurance benefits. (See Doc. # 12, Plaintiff's brief). Plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his

---

[1] Plaintiff testified that the accident occurred in 1983 (R. 136, 142-43). He told Dr. Dungan that the accident occurred in 1984 (R. 122), but told Dr. Ellis that it occurred in 1988 (R. 95). In his disability report, plaintiff indicates that the accident occurred on August 10, 1988 (R. 80).

[2] Plaintiff testified that he did not previously file an application for benefits because he did not have anyone to help him with it. (R. 137).

claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). In the absence of any medical evidence regarding the nature and extent of plaintiff's functional limitations before December 31, 2005, the court finds no error in the Commissioner's decision on plaintiff's Title II claim, and that decision is due to be affirmed.

## Title XVI Claim

On review of the ALJ's decision, the Appeals Council reached the same conclusion as the ALJ did regarding plaintiff's residual functional capacity, finding that plaintiff retained the residual functional capacity to perform a reduced range of light work. (R. 12, Finding No. 4). On the date of the ALJ's decision, plaintiff was 54 years and eight months of age – four months shy of attaining the age of 55, which the Commissioner considers to be "advanced age." See 20 C.F.R. § 416.963(e). A person of advanced age with a limited education like plaintiff's and only unskilled previous work and who can perform a full range of light work would be found disabled by application of Rule 202.01 of the "grids." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2. Application of the "grids" to a person with the same residual functional capacity, past work and education but who is "closely approaching advanced age" – *i.e.*, 50-54 years of age – would result in a finding of "not disabled." Id., Table No. 2, Rule 202.10; 20 C.F.R. § 416.963(d). Noting that the age categories are not to be "applied mechanically in borderline situations[,]" the Appeals Council concluded that plaintiff was "in the age category considered as advanced age since the date of the Administrative Law Judge's decision." (R. 10)(citing 20 C.F.R. § 416.963). Accordingly, the Appeals Council concluded that plaintiff was disabled beginning on April

13, 2007, the date of the ALJ's decision, but not before then. (R. 10-13).

Plaintiff takes issue with the Appeals Council's finding regarding his RFC, particularly with the determination that plaintiff is able to stand and walk six hours of an eight-hour work day, as is required to perform "light" work. (Plaintiff's brief, Doc. # 12, pp. 8-10).[3] Plaintiff testified that his leg begins to swell after he is on his feet for about three hours (R. 141) and that he spends "a couple three hours" each day with his leg elevated on pillows until the swelling resolves  (R. 142).  According to the vocational expert's testimony, the requirement to elevate his leg for "any significant amount of time" during the work day would preclude work.  Thus, plaintiff's testimony on this point is critical to the issue of disability.

The Commissioner is free to reject plaintiff's testimony, so long as his analysis complies with the Eleventh Circuit's "pain standard." In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  "The standard also applies to complaints of subjective

---

[3] Plaintiff and the Commissioner agree that the ALJ and Appeals Council erroneously referred to plaintiff's severe impairment of arthritis in his *right* knee, when it is his *left* knee that was injured in the accident.  The court agrees with the Commissioner that this error in the decision is not significant, as it is clear that the medical records pertained to injury to plaintiff's left knee.

conditions other than pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[4] "The credibility determination does not need to cite ""particular phrases or formulations'" but it cannot merely be a broad rejection which is '"not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.""" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

In its decision, the Appeals Council expressly adopted the ALJ's conclusions regarding plaintiff's subjective complaints. (R. 11). The reasons cited by the ALJ for discrediting plaintiff's testimony regarding his symptoms are that: (1) he has "no continuing

---

[4] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

medical regimen[;]" (2) he has had "limited use of pain medication[;]" (3) he has had "no hospitalizations for the pain alleged or referral to a pain clinic[;]" and (4) he sought no medical treatment between 1988 or 1989 and 2005.  (R. 29).

Plaintiff has indicated that he cannot afford medical treatment, prescription medications, or suppression stockings.  (R. 95, 117).  The ALJ stated:

> The Administrative Law Judge is aware of the claimant's limited financial means; however, he is not persuaded by allegations that the claimant was unable to obtain medical treatment for his impairments.  SSRs 87-6 and 82-59 provide that a report of financial inability to obtain prescribed treatment is only a justifiable cause for failure to do so when free community resources are unavailable.  *It is well-established that community clinics exist where the claimant lives and that such clinics offer both reduced and even free medical treatment for individuals with limited to no income.  Moreover, the record documents that the claimant smokes cigarettes.  It is not reasonable that one would forfeit medical treatment in favor of non-essential expenditures when funds are limited.*

(R. 28)(emphasis added).   It may be true that there are community clinics near New Brockton, where plaintiff lives, which offer free or low-cost medical care for patients who lack financial means to otherwise obtain such care.  However, the ALJ may not consider this "fact" unless there is some evidentiary basis in the record to support it, or it is an appropriate matter for judicial notice.  That free or low-cost medical services were available to the plaintiff in his area is not a matter of such common knowledge that the court may judicially notice it, and there is nothing in the administrative record which provides evidentiary support for this conclusion.  See Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997)("[T]aking of judicial notice of facts is, as a matter of evidence law, a highly limited process.").

Additionally, plaintiff's failure to quit smoking[5] – without more – does not provide a basis for rejecting his claim that he could not afford treatment.  See  Shramek v. Apfel, 226 F.3d 809, 813 (7th Cir. 2000)("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health.  One does not need to look far to see persons with emphysema or lung cancer – directly caused by smoking – who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop.  This is an unreliable basis on which to rest a credibility determination.").

Further, in reaching its determination on plaintiff's claim, the Appeals Council states that it considered, as "expert medical opinion" pursuant to SSR 96-6p, the findings of fact made "at the inital and reconsideration determinations" by state agency medical consultants. (R. 11).[6]  The referenced opinion, however, is not that of a physician; it is the opinion of the DDS disability examiner, Karen Wiggins. (See Exhibits 1A, 8E, 2F).  Her opinion is not, as the Appeals Council apparently believed, entitled to consideration as an expert medical opinion.  See Foxx v. Astrue, 2009 WL 2899048, 7 (S.D. Ala. Sept. 3, 2009)("The S.D.M.'s assessment does not constitute substantial evidence. While the findings of state agency medical consultants regarding the nature and severity of an individual's impairments must be considered and can be relied upon when they do not conflict with the opinions of

---

[5] He told Dr. Ellis that he smokes half a pack of cigarettes per day.  (R. 95).

[6] The ALJ had also relied on the conclusions of "[s]tate agency physicians" that plaintiff "was still able to perform certain types of work (Exhibits 8E and 2F), and gave this opinion evidence "great weight." (R. 29).

9

examining sources, there is no evidence before the Court that Carol M. Davis, S.D.M., the person who completed the RFC assessment is a medical consultant whose opinion qualifies as a medical source opinion."); Casey v. Astrue, 2008 WL 2509030, 4 n. 3 (S.D. Ala. June 19, 2008) (an RFC assessment completed by a disability specialist is entitled to no weight).

## CONCLUSION

For the reasons stated above, the Commissioner's decision as to plaintiff's Title II claim is due to be affirmed. However, because the Commissioner's credibility determination was flawed and because the Commissioner erroneously treated the opinion of the disability claims examiner as an expert medical opinion, the decision of the Commissioner regarding plaintiff's Title XVI claim is due to be reversed. By separate judgment, the court will remand this case to the Commissioner for further administrative proceedings.[7]

---

[7] The court notes that the medical evidence of record is very limited. It consists of a consultative examination by Mark Ellis, D.O.; treatment notes from plaintiff's treating orthopedic specialist, Dr. Bonnie Dungan, for three office visits on March 28, 2006, July 18, 2006, and November 6, 2006; an MRI performed on September 19, 2006, which showed mild degenerative changes to plaintiff's lumbar spine, with no significant stenosis; and a treatment note from Dr. Fleming Brooks, who examined plaintiff's hand after plaintiff cut his thumb while chopping with an axe. Plaintiff relies heavily on Dr. Dungan's treatment notes for July 18, 2006. Dr. Dungan states:

> She [sic] was previously seen in therapy. Symptoms are really no better. Sometimes his knee pain really swells after prolonged periods of time almost every other day and it seems like it gets a little bit red and goes into his calf. His whole leg seems swollen. He does [not?] wear any compression stockings as he can't afford them. He could not afford the Naprosyn that was previously prescribed. He is having PT through VR. I would also like for him to as[k] VR if they will pay for his TED stockings. We will give him some Celebrex samples so he won't have to pay for those for the next month to see how he responds to this.

(R. 117). Since there is no evidence that Dr. Dungan actually saw plaintiff "every other day," it appears that her note is recounting his complaints to her, not her observations. Dr. Dungan did prescribe a compression stocking, but she did not specifically note "edema" in her treatment notes. Additionally, while Dr. Ellis did note pretibial edema during the examination on September 5, 2005, it was minimal – 1+ in the left leg and "trace" in the right. (R. 98). The court does not suggest that the Commissioner must find plaintiff to have been disabled during the period in question or that the ALJ or Appeals Council could not have discounted

Done, this 11th day of March, 2010.

                                        /s/ Susan Russ Walker  
                                      SUSAN RUSS WALKER  
                                      CHIEF UNITED STATES MAGISTRATE JUDGE

---

plaintiff's testimony regarding significant swelling on the present record. Instead, the reasons cited in the ALJ's decision and adopted by the Appeals Council are not sufficient.

11